1
2                                                                    O
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10
11   TRACY L. COLLINS,              )  Case No. CV 07-08082-OP
12              Plaintiff,          )
                                    )
13          v.                      )  MEMORANDUM OPINION; ORDER
                                    )
14   MICHAEL J. ASTRUE,             )
     Commissioner of Social Security, )
                                    )
15              Defendant.          )
                                    )
16   ———————————————————           )
17       The Court[1] now rules as follows with respect to the disputed
18   issues listed in the Joint Stipulation ("JS").[2]
19   / / /
20   / / /
21   / / /
22                                **I.**
23   ————————————
24       [1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the
     United States Magistrate Judge in the current action.  (See Dkt. Nos. 7, 9.)
25
26       [2] As the Court advised the parties in its Case Management Order, the
     decision in this case is being made on the basis of the pleadings, the Administrative
27   Record, and the Joint Stipulation filed by the parties.  In accordance with Rule
     12(c) of the Federal Rules of Civil Procedure, the Court has determined which
28   party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

                                    1

1

**DISPUTED ISSUES**

2      As reflected in the Joint Stipulation, the disputed issues which Plaintiff

3 raises as the grounds for reversal and/or remand are as follows:

4      1.      Whether the Administrative Law Judge ("ALJ") erred by failing to

5              properly evaluate Plaintiff's credibility; and

6      2.      Whether Plaintiff's newly submitted evidence warrants a remand.

7 (JS at 3.)

8

**II.**

9

**STANDARD OF REVIEW**

10      Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision

11 to determine whether the Commissioner's findings are supported by substantial

12 evidence and whether the proper legal standards were applied.  DeLorme v.

13 Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more

14 than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402

15 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of

16 Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial

17 evidence is "such relevant evidence as a reasonable mind might accept as adequate

18 to support a conclusion."  Richardson, 402 U.S. at 401 (citation omitted).  The

19 Court must review the record as a whole and consider adverse as well as

20 supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).

21 Where evidence is susceptible of more than one rational interpretation, the

22 Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452

23 (9th Cir. 1984).

24 / / /

25 / / /

26 / / /

27 / / /

28

**III.**

1

**DISCUSSION**

2

**A.     The ALJ Properly Evaluated Plaintiff's Credibility.**

3      Plaintiff contends the ALJ failed to provide clear and convincing reasons for

4 rejecting her testimony regarding her subjective symptoms.  (JS at 3-5, 9-10.)  In

5 particular, Plaintiff claims that the ALJ improperly rejected Plaintiff's subjective

6 symptoms of disabling pain and mental impairments.  (Id. at 4.)  Plaintiff also

7 claims that the ALJ failed to consider the factors in Social Security Ruling ("SSR")

8 96-7p in rejecting her subjective symptoms.  (Id. at 4-5, 9-10.)

9      An ALJ's assessment of pain severity and claimant credibility is entitled to

10 "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.

11 Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a

12 claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must

13 make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th

14 Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also

15 Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that

16 claimant was not credible is insufficient).

17      Under the "Cotton test," where the claimant has produced objective medical

18 evidence of an impairment which could reasonably be expected to produce some

19 degree of pain and/or other symptoms, and the record is devoid of any affirmative

20 evidence of malingering, the ALJ may reject the claimant's testimony regarding

21 the severity of the claimant's pain and/or other symptoms only if the ALJ makes

22 specific findings stating clear and convincing reasons for doing so.  See Cotton v.

23 Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d

24 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993);

25 Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

26      To determine whether a claimant's testimony regarding the severity of his

27 symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1)

28 ordinary techniques of credibility evaluation, such as the claimant's reputation for

lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284.

Social Security Ruling ("SSR") 96-7p[3] further provides factors that may be considered to determine a claimant's credibility such as:  1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p.

Here, the ALJ expressly discredited Plaintiff's subjective symptoms for the following reasons: (i) Plaintiff's allegations were unsupported by the objective medical evidence;[4] (ii) Plaintiff's test results evidenced malingering; and (iii)

---

[3]  Social Security Rulings are binding on ALJs.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

[4]  Notably, Plaintiff does not argue that the ALJ erred by improperly affording weight to the various medical sources.  (See generally JS.)  Thus, the
(continued...)

4

1    Plaintiff performed some work after October 9, 2001.  (Administrative Record

2    ("AR") at 23-24.)

3         The ALJ relied upon several medical opinions to discredit the alleged

4    severity of Plaintiff's disabling pain and existence of medical impairments,

5    primarily in her ankle.  (Id. at 18-24.)  The ALJ stated, "[T]he medical evidence

6    indicates that the claimant's impairments are not supported by the objective

7    evidence."  (Id. at 23.)  The record supports the ALJ's findings.

8         First, the ALJ relied upon the findings of Plaintiff's treating physicians who

9    conducted x-rays and examinations of Plaintiff's lower extremities, and provided

10   normal and/or unremarkable findings.  (AR at 204-342, 392-500.)  For example,

11   treating physician Dr. Glen Takei examined Plaintiff's left knee, ankle, foot and

12   other complaints of disabling pain from October 19, 2001 through July 2, 2003.

13   (Id. at 204-342.)  He concluded that the x-rays and bones are normal, the joints are

14   well-preserved, and there is no evidence of bone atrophy.  (Id. at 302.)  Dr. Takei

15   also performed an MRI on Plaintiff's ankle, and although he found minor joint

16   effusion, the exam was mostly "unremarkable."  (Id. at 315-16.)  While Dr. Takei

17   found that Plaintiff has left ankle sprain with chronic discomfort and developing

18   left knee pain, Dr. Takei provided no functional limits and recommended that

19   Plaintiff "continue with her regular work duties."  (Id. at 318.)  Additionally, the

20   ALJ relied upon the findings of treating physician of Dr. Stephen Roberts, who

21   treated Plaintiff from March 2003 through August 2004.  (Id. at 18, 392-500.)  On

22   March 23, 2004, an MRI of Plaintiff's ankle was found to be normal.  (Id. at 436-

23   37.)  On several progress reports, Dr. Roberts diagnosed Plaintiff with: (i) internal

24   dearrangement left ankle; (ii) depression due to chronic pain; and (iii) lumbar spine

25

26   _____

27   [4](...continued)
     Court will not discuss this issue in its analysis of the ALJ's finding regarding

28   Plaintiff's credibility.

1    strain due to altered gait.  (<u>Id.</u> at 427-28, 431-32, 434-35, 454-455, 458-59, 474-77,

2    489, 492.)  The ALJ noted that Dr. Roberts' treatment plan by stating, "Various

3    modalities of therapy and pain medications were administered over the course of

4    [Dr. Roberts'] treatment."  (<u>Id.</u> at 18.)  Despite the findings and treatment

5    suggestions of Drs. Takei and Roberts, both doctors failed to assess and functional

6    limitations or provide objective medical evidence to support Plaintiff's contentions

7    of disabling pain.  (<u>Id.</u> at 18, 204-342, 392-500.)

8         Next, the ALJ relied upon the opinion of the consultative physician, Dr.

9    Ronald Perelman, to support his adverse credibility determination as to Plaintiff's

10   allegations of disabling pain.  (<u>Id.</u> at 18-19, 501-512.)  On September 17, 2003, Dr.

11   Perelman performed a formal medical evaluation of Plaintiff, and he provided the

12   following diagnoses: (i) work-related chronic ankle strain; (ii) low back pain

13   secondary to abnormal weight breaking; and (iii) possible sympathetic dystrophy,

14   left lower extremity.  (<u>Id.</u> at 509.)  Dr. Perelman also observed that x-rays of

15   Plaintiff's ankles were within normal limits except for a possible cyst.  (<u>Id.</u>)  As to

16   "Objective Factors of Disability," Dr. Perelman stated:

17              Objectively, with regard to the patient's right ankle, I noted

18              my findings on physical examination, including a marked

19              antalgic gait, use of a cane for ambulation, inability to

20              ambulate on heels or toes, and tenderness of the lateral

21              ankle ligaments.  I also notes [sic] neurological testing.

22   (<u>Id.</u> at 510.)  Dr. Perelman also noted that Plaintiff's subjective complaints

23   indicated constant moderate right ankle pain.  (<u>Id.</u>)  Again, despite the findings of

24   Dr. Perelman, he provided no objective medical evidence to support Plaintiff's

25   contentions of disabling pain, which the ALJ properly relied on to discredit

26   Plaintiff's allegations.  (<u>Id.</u> at 18-19.)

27        Finally, the ALJ based his adverse credibility determination on the

28

observations of consultative examiner Dr. F. Wilson, medical expert Dr. Michael Gurvey, and consultative orthopedic physician Dr. Herbert E. Johnson. (Id. at 20-21, 343-50, 535-44, 583-607.) Dr. Wilson opined that Plaintiff could perform a limited range of light work and that her physical impairments did not meet or equal a Listing. (Id. at 343-50.) Additionally, Dr. Gurvey testified, *inter alia*, that Plaintiff was treated for a routine, mild to moderate ankle sprain, which should have healed in three to six weeks. (Id. at 585.) After that period of time, Dr. Gurvey opined that Plaintiff was treated by her doctors based upon her subjective complaints of pain. (Id. at 585-86.) He noted that Plaintiff's doctors conducted an "extensive workup" to determine that there were no organic structural, arthritic, or other problems to explain her pain allegations. (Id.) He further opined that these doctors' "studies have not revealed any abnormalities." (Id.) Moreover, Dr. Johnson concluded that Plaintiff could perform a limited range of medium work. (Id. at 538, 541-44.) After considering these assessments, the ALJ opined that he only partially accepted these limitations and Plaintiff's allegations, and he adopted the following residual functional capacity ("RFC"):

> Based on my review of the record, I find that the claimant's impairments limit her to less than a full range of light exertional level work activity. She is capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking two hours in an eight-hour workday, and sitting for six hours in an eight-hour workday. She requires the use of a cane. The claimant is further restricted from the use of right foot controls and from climbing ladders, ropes, or scaffolds; she may occasionally climb ramps and stairs. She is limited to occasional balancing, stooping, kneeling, crouching, and crawling, and must

1    further avoid to work around hazardous machinery.

2  (Id. at 20.)  Accordingly, the ALJ considered several medical sources, including

3  treating physicians, medical experts, and consultative physicians, to discredit

4  Plaintiff's contentions of disabling pain.  (Id. at 18-24); see also Thomas, 278 F.3d

5  at 958-59; Smolen, 80 F.3d at 1284; SSR 96-7p.

6          The ALJ also relied upon several medical opinions to discredit the alleged

7  severity and existence of Plaintiff's mental impairments, notably depression with

8  anxiety.  (Id. at 19-24.)  As stated above, the ALJ found that the objective medical

9  evidence does not support Plaintiff's allegations regarding her disabling mental

10  impairments.  (Id. at 18.)  The ALJ's finding are supported by the record.

11          Here also, the ALJ considered and rejected various medical opinions

12  regarding Plaintiff's alleged mental impairments.  (Id. at 19.)  For example, on

13  September 14, 2004, Dr. Thomas Curtis conducted psychological testing on

14  Plaintiff.  (Id. at 392-422.)  Dr. Curtis concluded that Plaintiff has depressive

15  disorder, not otherwise specified with anxiety.  (Id. at 411.)  To contradict Dr.

16  Curtis' testimony, the ALJ relied on the testimony of Dr. Glenn Griffin, a

17  consultative psychologist.  (Id. at 22.)  The ALJ, in relevant part, provided:

18          Dr. Curtis appeared to rely in large part on the claimant's

19          allegations.  As stated previously, I do not find the claimant

20          to be a fully credible witness and discount the findings and

21          conclusions on these unreliable claims. [¶] Furthermore, .

22          . . Dr. Griffin testified that there were problems with the

23          objective testing performed by Dr. Curtis in September

24          2004 . . . because of exaggeration and over-reporting. . . .

25          Dr. Griffin added that there was no objective evidence of

26          cognitive impairment. He disagreed with the opinion of Dr.

27          Curtis, offering the opinion that the findings were not

28

8

1    supported by clinical observation and objective testing.

2    Id.; see also Thomas, 278 F.3d at 957 (an ALJ is not required to accept the opinion

3    of any physician, if that opinion is brief, conclusory or inadequately supported by

4    clinical findings); Matney, 981 F.2d 1016, 1019 (9th Cir. 1992.)  The ALJ further

5    reasoned that Dr. Curtis provided no objective opinions, but rather attempted to

6    provide Plaintiff with "mental limitations that would be considered most favorable

7    to a finding of disability."  (AR at 23.)

8        The ALJ also rejected the findings of the consultative examiner, Dr. Mark

9    Salib, to support his finding of non-severe mental impairments.  (Id. at 21-22.)  On

10   September 3, 2003, Dr. Salib conducted a mental RFC assessment of Plaintiff and

11   found that she was generally not significantly limited in understanding and

12   memory, sustained concentration and persistence, social interaction, and adaption.

13   (Id. at 351-54.)  Dr. Salib, however, found that Plaintiff was moderately limited in

14   her ability to understand, remember, carry out detailed instructions and her ability

15   to interact appropriately with the general public.  (Id.)  Despite Dr. Salib's

16   findings, the ALJ stated:

17            I also considered the mental assessment provided by the

18            State Agency psychiatrist, Dr. Mark Salib.  However, I

19            have given weight to the opinion of the medical expert.  Dr.

20            Griffin is the only expert who reviewed the entire file.  He

21            had the opportunity to consider all the treating, examining,

22            and reviewing opinions and was therefore in the best

23            position to evaluation the claimant's psychiatric condition.

24            Further, Dr. Griffin's opinion is more consistent with the

25            record as a whole.  Dr. Griffin also provided a better

26            explanation of the mental conditions and possible

27            limitations.

28

1    (AR at 21-22 (citations to omitted)); <u>see also</u> <u>Thomas</u>, 278 F.3d at 957; <u>Matney</u>,

2    981 F.2d at 1019.

3         Next, the ALJ considered and discounted the opinion of Dr. Robin Rhodes

4    Campbell.  (<u>Id.</u> at 19-23.)  On September 16, 2005, Dr. Campbell conducted a

5    complete psychological evaluation, and she diagnosed Plaintiff with the following:

6    (i) major depressive disorder, moderate, recurrent; (ii) factitious disorder; and (iii)

7    rule out malingering.  (<u>Id.</u> at 545-55.)  The ALJ, however, rejected Dr. Campbell's

8    findings based upon the opinion of Dr. Griffin, who only restricted Plaintiff from

9    complex or detailed tasks.  (<u>Id.</u> at 23, 636-49, 650-55); <u>see also</u> <u>Thomas</u>, 278 F.3d

10   at 957; <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995); <u>Magallanes v.</u>

11   <u>Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1996.).

12        The ALJ, thus, properly rejected the opinions of Drs. Curtis, Salib and

13   Campbell, and he provided the following mental RFC for Plaintiff:

14             [I]n view of the assessments by Dr. Campbell and Dr.

15             Griffin, I have determined that the claimant's depressive

16             disorder is non-severe.  The condition, at most, mildly

17             limits the claimant's activities of daily living, social

18             functioning, and ability to maintain concentration

19             persistence, or pace.  There is no evidence of episodes of

20             decompensation. [¶] . . . In regard to the [Plaintiff's] mental

21             limitations, I have adopted the opinion of the medical

22             expert, Dr. Glenn Griffin and find that, although there was

23             no objective evidence of cognitive impairments, giving the

24             claimant the benefit of the doubt, she is limited to the

25             performance of simple repetitive tasks.

26   (<u>Id.</u> at 19-20.)  Accordingly, the ALJ properly discounted Plaintiff's credibility

27   regarding the severity and effect of her mental impairments based upon the

28

1  findings and testimony of various medical sources.  Thomas, 278 F.3d at 958-59;
2  Smolen, 80 F.3d at 1284; SSR 96-7p.

3          The ALJ also discounted Plaintiff's credibility as to her subjective
4  symptoms based upon evidence of malingering and work performed by Plaintiff
5  after October 9, 2001.  (AR at 23-24.)  First, the ALJ relied upon the opinions of
6  Drs. Campbell and Griffin to evidence malingering, or at the least, poor effort and
7  over exaggeration.  The ALJ provided:

8              [A]t the time of the psychological evaluation, the
9              claimant put forth sub-optimal effort throughout the
10             session.  Dr. Campbell specifically noted that MMPI test
11             results were invalid, and the WAIS IQ test scores were
12             not consistent with the claimant's current level of
13             functioning or her past history.  The Rey 15-Item
14             Memory Test results were also questionable, and Dr.
15             Campbell stated that the claimant's scores indicated that
16             ". . .she was not motivated to perform well."  Dr.
17             Campbell concluded that based on the results of these
18             tests, there was a strong possibility that the claimant was
19             malingering or exaggeration psychological symptoms.
20             Dr. Griffin was even more forthright about this,
21             characterizing the claimants' performance as showing a
22             pattern of exaggeration and over-reporting, bordering on
23             gross malingering. [¶] Even if not actually malingering,
24             the claimant has been described as exhibiting
25             exaggeration and poor cooperation on examination.
26             Efforts to impede accurate testing and evaluation support
27             a finding of poor credibility.

28

1   (Id.)  The record supports the ALJ's opinion regarding malingering, or poor effort
2   and over-exaggeration.  (Id. at 549, 551, 641-42, 645-47, 651-53.)  Additionally,
3   the ALJ noted that Plaintiff earned $4,474.51 after the date of her disability in
4   2002.  (Id. at 17, 136.)  The ALJ conceded that her 2002 earnings is not "evidence
5   of disqualifying substantial gainful activity."  (Id. at 17.)  However, the ALJ stated:

6           I may legitimately consider whether this activity shows that
7           the claimant's capacity is greater than alleged, and
8           indicative of the capacity for substantial gainful activity, or
9           at least an absence of credibility in the claimant's
10          allegations.  I find the latter to be the case here.

11  (Id. at 24); see also Thomas, 278 F.3d at 958-59; Smolen, 80 F.3d at 1284.
12  Accordingly, the ALJ relied upon evidence of malingering, poor effort, or over
13  exaggeration and work performed after the disability onset date to discount
14  Plaintiff's credibility.

15      Plaintiff further asserts that the ALJ's credibility analysis is flawed because
16  he failed to consider the seven factors for evaluating credibility enumerated in SSR
17  96-7p.  (JS at 4-5, 9-10.)  Plaintiff's contention is without merit.

18      The ALJ was not required to discuss and analyze all of the factors
19  enumerated in SSR 96-7p.  Rather he must give consideration to these factors.  See
20  SSR 96-7p at *3 (an ALJ must consider the seven factors enumerated in SSR 96-7p
21  in addition to the objective medical evidence when assessing a Plaintiff's
22  credibility); see also Smolen, 80 F.3d at 1284; Bunnel, 947 F.2d at 346.  Here, the
23  record as a whole reflects adequate consideration.  For example, testimony was
24  elicited about Plaintiff's daily activities although the ALJ did not specifically
25  address these activities in his credibility determination.  (AR at 16-27, 616, 622-
26  25.)  In fact, the Court's review of the transcript indicates that testimony was
27  elicited from Plaintiff regarding all seven enumerated factors, regardless of

28

whether the ALJ explicitly mentioned the factors in the body of his decision.  (Id. at 613-36.)  Further, the ALJ's decision explicitly addressed some of the factors, such as the location, duration, frequency and intensity of Plaintiff's pain and symptoms, and other factors concerning the Plaintiff's functional limitations and restrictions due to pain or other symptoms.  (Id. at 16-27); see also SSR 96-7p. Moreover, other than asserting that the ALJ failed to address the enumerated factors, Plaintiff cites to nothing in the record to support her contentions regarding her disabling symptoms.  (JS at 4-5, 9-10.)  Thus, the ALJ adequately considered the factors enumerated in SSR 96-7p to support his adverse credibility finding. See SSR 96-7p; see also Smolen, 80 F.3d at 1284; Bunnell, 947 F.2d at 346.

Based on the foregoing, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's credibility regarding her subjective contentions of disabling pain and mental impairments.  See Cotton, 799 F.2d at 1407; see also Smolen, 80 F.3d at 1281; Dodrill, 12 F.3d at 918; Bunnell, 947 F.2d at 343; SSR 96-7p.  Thus, there was no error.

**B.      Plaintiff's "Newly Submitted Evidence" Does Not Warrant Remand.**

Plaintiff's next contention is that the Court should remand her case based upon her newly submitted evidence.  (JS at 10-11, 13-14.)  The Court disagrees.

A case may be remanded to the Commissioner for further consideration pursuant to Sentence Six of 42 U.S.C. § 405(g) "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  See 42 U.S.C. § 405(g) (sentence six); Allen v. Secretary of Health & Human Servs., 726 F.2d 1470, 1473 (9th Cir. 1984).  To be material, the new evidence must bear directly and substantially on the matter in issue, and there must be a real possibility that the new evidence would have changed the outcome if it had been before the ALJ.

13

1   Cotton, 799 F.2d at 1408.  The good cause requirement is satisfied if new

2   information surfaces after the Commissioner's final decision and the claimant

3   could not have obtained that evidence at the time of the administrative proceeding.

4   See Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985).

5        In this case, Plaintiff has failed to show that the newly submitted evidence is

6   material and that good cause exists for Plaintiff's failure to incorporate the

7   evidence into the Administrative Record.  Plaintiff has submitted two new pieces

8   of evidence to this court: (i) a Radiologic Consultation Report conducted by Dr.

9   Danica Holt on November 27, 2007; and (ii) a pulmonary functioning test

10  conducted on October 15, 2007.  (JS at Ex. 1-2.)  The 2007 radiology report

11  indicates that Plaintiff has "mild L5-S1 disc space narrowing as well as facet

12  hypertrophy."  (JS at Ex. 1.)  However, Dr. Holt noted that Plaintiff's degenerative

13  changes are stable.  Id.   The 2007 pulmonary report suggests that Plaintiff has

14  "mild obstruction." (JS at Ex. 2.)

15       Here, Plaintiff's newly submitted evidence is not material.  First, the 2007

16  radiology report is a result of consultation request of Dr. Sisira Gunawardane,[5]

17  whose opinion the ALJ properly rejected.  (JS at Ex. 1; AR at 21-22, 556.)

18  Moreover, the ALJ considered the opinion of Dr. Gurvey, who considered the

19  entire medical record including Plaintiff's lumbar spine MRIs.  (AR at 592-95.)

20  Dr. Gurvey testified that the MRIs revealed only insignificant findings, typical of

21  the normal population in their forties.  (Id. at 594.)  As a result, the 2007 radiology

22  report merely corroborates Dr. Gurvey's testimony, which the ALJ considered in

23

24       [5] On Feburary 16, 2006, Dr. Gunawardane opined that Plaintiff suffered

25  from chronic depression and fibromyalgia, and as a result, could perform a limited

26  range of sedentary work.  (AR at 556.)  The ALJ rejected Dr. Gunawardane's
    opinion because it was primarily based upon Plaintiff's complaints, unsupported by

27  clinical findings, and in conflict with the medical record.  (Id. at 21-22); see also

28  Thomas, 278 F.3d at 957; Matney, 981 F.2d at 1019.

1   his assessment of Plaintiff.  Additionally, there is no real possibility that the report

2   would have changed the ALJ's decision as it did not provide any new findings.  (JS

3   at Ex. 1.)  Moreover, the report only reflected "stable" degenerative changes and

4   provided no functional limitations or other relevant findings.  (Id.)  Thus, Plaintiff

5   fails to show that the 2007 radiology report is material.  Allen, 726 F.2d at 1473;

6   see also Cotton, 799 F.2d at 1408.  Assuming arguendo that the Court was to find

7   that the report was material, Plaintiff fails to show good cause here.  See Mayes v.

8   Massanari, 276 F.3d 453, 463 (9th Cir. 2001) ("A claimant does not meet the good

9   cause requirement by merely obtaining a more favorable report once his or her

10  claim has been denied."); see also Key, 754 F.2d at 1151 (citing Booz v. Sec'y of

11  Health and Human Servs., 734 F.2d 1378, 1380 (9th Cir. 1984) ("If new

12  information surfaces after the Secretary's final decision and the claimant could not

13  have obtained that evidence at the time of the administrative proceeding, the good

14  cause requirement is satisfied.")

15        Second, the 2007 pulmonary report is also not material because it does not

16  bear directly and substantially on the matter at issue here.  Cotton, 799 F.2d at

17  1408.  Here, Plaintiff complained of depression and chronic pain.  (AR at 144-53,

18  155.)  Further, the ALJ determined that Plaintiff suffers from the following

19  medically determinable physical impairments: "status-post left ankle aprain with

20  chronic pain of unknown etiology, and a depressive disorder with anxiety."  (Id. at

21  19, 26.)  There is no indication that Plaintiff alleged any pulmonary complaints in

22  her disability application or during the hearing, or provided evidence of pulmonary

23  impairments in her treatment records.  (See generally AR.)  Additionally, Plaintiff

24  fails to show good cause for not introducing evidence of pulmonary problems as

25  she could have sought treatment or raised the issue before the ALJ.

26        Based on the foregoing, the Court finds that Plaintiff's "newly submitted

27  evidence" does not warrant remand.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: April 27, 2009

HONORABLE OSWALD PARADA
United States Magistrate Judge

16